[870 NE2d 146, 838 NYS2d 828]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY BRATTON, Appellant.

Argued May 3, 2007; decided June 12, 2007

**POINTS OF COUNSEL**

*Schlather, Geldenhuys, Stumbar & Salk,* Ithaca (*Diane V. Bruns* of counsel), for appellant. A warrantless arrest of a parolee by a parole officer is not an authorized arrest and, accordingly, cannot serve as the predicate to a conviction for the crime of resisting arrest. (*People v Huntley,* 43 NY2d 175; *Best v State of New York,* 264 AD2d 404; *People v Dyla,* 142 AD2d 423; *People ex rel. Maggio v Casscles,* 28 NY2d 415; *Matter of Mullins v State Bd. of Parole,* 43 AD2d 382; *People ex rel. Walker v Hammock,* 78 AD2d 369; *Morrissey v Brewer,* 408 US 471; *United States v Polito,* 583 F2d 48; *United States v Garcia-Hernandez,* 237 F3d 105; *People v Gordon,* 176 Misc 2d 46.)

*Gwen Wilkinson, District Attorney,* Ithaca (*Sara Kim Keller* of counsel), for respondent. I. Defendant's arrest was lawful, because defendant's conduct gave rise to probable cause to arrest for a defined "offense" in the Penal Law, and not just for a technical parole violation. (*People v Duprey,* 98 AD2d 110; *People v King,* 102 AD2d 710; *People v Gustafson,* 110 AD2d 1055; *People v Fields,* 146 AD2d 505; *People v Washington,* 196 AD2d 346; *People v Laltoo,* 22 AD3d 230; *People v McRay,* 51 NY2d 594; *People v Thomas,* 239 AD2d 246.) II. A warrantless arrest for a parole violation based on probable cause should not be held invalid summarily; Executive Law § 259-i (3) and 9 NYCRR part 8004 apply to parole revocation proceedings as a whole. (*Morrissey v Brewer,* 408 US 471; *People v Dyla,* 142 AD2d 423.) III. A parole officer should be granted at least the same authority to make warrantless arrests as probation officers. (*Morrissey v Brewer,* 408 US 471; *People v Huntley,* 43 NY2d 175.) IV. It is against public policy to prohibit a parole officer from retaking a parolee due to the lack of a parole warrant when the parolee violates a parole condition in the supervising officer's presence and then threatens to leave the premises against the parole officer's directives. (*Morrissey v Brewer,* 408 US 471; *People v Huntley,* 43 NY2d 175; *People v Santos,* 82 Misc 2d 184.)

**OPINION OF THE COURT**

READ, J.

Defendant Larry Bratton was convicted of criminal sale of a

controlled substance in the fifth degree on October 19, 2001, and subsequently sentenced to incarceration. On January 14, 2005, he was released from Watertown Correctional Facility to parole supervision. As conditions of his parole release, defendant consented in writing to permit his assigned parole officer, Edward Wijkowski, to visit him at his residence, to submit to substance abuse testing, and to comply fully with the parole officer's instructions.

On February 8, 2005 at about 8:45 P.M., Wijkowski and parole officer Jeffrey Jones made an unannounced "positive home visit" to see defendant in his apartment in person, as was required within 30 days of defendant's release, and to take a urine sample because defendant, who had violated parole previously, was considered "a high risk case." Upon arrival at the apartment, Wijkowski knocked on the door, identified himself and asked to be admitted.

Defendant, who was partially clothed at the time, opened the door to admit Wijkowski and Jones. After asking defendant where the bathroom was, Wijkowski realized that neither he nor Jones had brought the test kit in from the car. Wijkowski announced that he would return to the car to get the kit, and instructed Jones to remain with defendant.

Defendant was suspicious of Wijkowski and wary of Jones, whom he had not met before. As Wijkowski started to leave the apartment, defendant balked at the drug test, complaining that his curfew was not until 10:00 P.M., and declaring that the officers would have to come back then. He began getting dressed as if to leave. When Jones instructed defendant to sit down on his bed, he questioned why Jones was in his apartment at all, and asked who he was. Jones identified himself as a parole officer, and directed defendant to comply with his order, citing the condition of defendant's parole release requiring him to comply fully with a parole officer's instructions. Instead, defendant, by now fully dressed, got up and pushed past Jones using his shoulder.

Sensing an escalating conflict, Wijkowski had already called the local police department from the hallway just outside defendant's apartment, using his cell phone. As he reentered the apartment, Wijkowski observed defendant push Jones, and told him that he was under arrest for a parole violation. Wijkowski testified that although he did not call out the particular parole violation, he arrested defendant for "his failure to comply with our directives to him to submit to a urine test." Defendant

struggled with the officers. They ultimately pulled him down onto the mattress on his bed and held him there until they managed to handcuff him. He was subsequently charged with one count of resisting arrest (Penal Law § 205.30), and one count of obstructing governmental administration in the second degree (Penal Law § 195.05).

Defendant proceeded to a nonjury trial in City Court. At the conclusion of the People's case, he moved to dismiss the charge of resisting arrest on the ground that the arrest was unauthorized because made without a warrant in violation of Executive Law § 259-i (3) (a) (i) and 9 NYCRR 8004.2. These provisions state generally that a parole officer who has reasonable cause to believe that a parolee has violated a condition of parole must report that fact to a member of the New York State Parole Board or an officer of the New York State Division of Parole designated by the Board, who may then issue a warrant for the retaking and temporary detention of the parolee. The court reserved decision on the motion, which defendant renewed on the same ground at the conclusion of all the testimony.

After posttrial memoranda were submitted on the issue, City Court handed down a written decision on August 26, 2005, finding defendant not guilty of the crime of obstructing governmental administration, but guilty of resisting arrest, and sentencing him to time served, concurrent with the parole violation time.[1] While acknowledging 9 NYCRR 8004.2, City Court concluded that it was "not necessary for a parole officer to obtain a parole violation warrant to arrest a parolee whose violation occurs in the presence of the parole officer during an interview." Because Wijkowski was therefore authorized to arrest defendant without first obtaining a warrant and defendant resisted the arrest with physical force, the court found that the evidence supported the charge of resisting arrest.

Defendant appealed to County Court, which affirmed his judgment of conviction on August 21, 2006. In its decision, County Court noted that defendant's "primary point on appeal [was] that his arrest by a parole officer, without a warrant issued pursuant to Executive Law 259-i (3) (a) (i) and Title 9 of the New York Code of Rules and Regulations, was illegal," and therefore City Court should have dismissed the charge of resisting arrest.

---

1. As a result of the incident on February 8, 2005, defendant was also cited for a violation of the terms of his parole, for which he had a parole revocation hearing.

The court decided, however, that while a parole officer may seek a warrant for a parole violation, this procedure was "not the exclusive avenue for charging a parole violation and effecting an arrest when the offending conduct has occurred in the presence of the parole officer." County Court further observed that a parole officer is a peace officer (CPL 2.10 [23]), and that a peace officer is authorized to make a warrantless arrest upon reasonable cause for any offense committed in his presence (CPL 140.25 [1] [a]). A Judge of this Court subsequently granted defendant leave to appeal, and we now reverse.

Executive Law § 259-i (3) (a) (i) provides that when a parole officer having charge of a parolee has reasonable cause to believe that the parolee has violated one or more conditions of his parole, he

> "shall report such fact to a member of the board of parole, or to any officer of the division designated by the board, and thereupon a warrant may be issued for the retaking of such person and for his temporary detention in accordance with the rules of the board."

Similarly, 9 NYCRR 8004.2 (a) specifies that if a parole officer "shall have reasonable cause to believe that [a releasee for whom he has charge] . . . has violated one or more of the conditions of his release in an important respect, such parole officer shall report such fact to a member of the board or a designated officer"; and further that "[n]o officer shall issue a warrant in a case where he is the one who furnishes the report upon which it is based." In short, the statute and the Division's implementing regulations do not vest parole officers with the power to make warrantless arrests for parole violations even if committed in their presence. A member of the Board or a designated officer of the Division must issue a warrant.

It can be argued, as the People do here, that an exception to the warrant requirement for those violations taking place in a parole officer's presence would make sense. The People point out that CPL 410.50 (4) authorizes a probation officer to take a probationer into custody without a warrant when he has "reasonable cause to believe that a person under his supervision pursuant to a sentence of probation has violated a condition of the sentence," and parolees have generally committed more serious crimes than probationers. The Legislature, however, did not include language comparable to CPL 410.50 (4) in the provisions of the Executive Law governing violation of parole. Nor

can there be any doubt that this was a considered legislative choice.

Former section 216 of the Correction Law provided that

"[i]n any case where a parole officer has reasonable cause to believe that [a] parolee has violated the conditions of his parole in an important respect, such parole officer may retake such parolee and cause him to be temporarily detained without a warrant . . . . A . . . written request for temporary detention signed by a parole officer who has arrested a parolee without a warrant[ ] shall constitute sufficient authority to the superintendent or other person in charge of any jail, penitentiary, lockup or detention pen to whom it is delivered to hold in temporary detention the parolee named therein; provided, however, the temporary detention pursuant to a written request which is not accompanied by a warrant shall not exceed a period of twenty-four hours, and if a warrant be not delivered to the person in charge of the detention facility prior to the expiration of such twenty-four hour period the parolee must be released at the expiration of such twenty-four hour period."

Similarly, former section 829 (3) of the Correction Law stated that "[w]here a parole officer has reasonable cause to believe that a person has violated the conditions of his release or parole in an important respect, such parole officer may retake such parolee and cause him to be temporarily detained without a warrant."

The Legislature added the quoted language to former sections 216 and 829 (3) in chapter 658 of the Laws of 1968. The bill enacted as chapter 658 was submitted at the request of the Division, which characterized its provisions as "a practical and workable solution to resolve some present problems and difficulties which exist in relation to issuance of warrants and detention of violators" (*see* Mem from Div of Parole to Counsel to Governor, Bill Jacket, L 1968, ch 658, at 10). The Department of Correction called the bill a "good" one, which would "enable a parole officer to temporarily detain a parolee who is in violation of parole before he can abscond or get into further trouble" (*see* Letter of Support from Dept of Correction to Counsel to Governor, Bill Jacket, L 1968, ch 658, at 11). The Attorney General likewise commented that the bill would

"allow parole officers who actually find a parolee violating the condition of his parole to retake that person immediately and cause him to be detained temporarily in a detention facility. Formerly, a report had to be made out of the violation and a Senior Parole Officer, or another person, then issued a warrant. In many cases the parolee in the meantime, knowing he had violated the conditions of his parole, would abscond or evade retaking" (*see* Mem for Governor from Attorney General, Bill Jacket, L 1968, ch 658, at 5-6).

Nine years later, the Legislature repealed former sections 216 and 829 (3) when it enacted chapter 904 of the Laws of 1977, which reorganized the Division of Parole by removing it from the Department of Correctional Services and placing it in the Executive Department. The subject matter of these former sections of the Correction Law—violation of parole—has ever since been covered by article 12-B of the Executive Law (§ 259 *et seq.*), which notably nowhere authorizes parole officers to make warrantless arrests for parole violations.[2]

As a final matter, we note that CPL 140.25 (1) (a) does not furnish a way around the warrant requirement in this case. A parole officer is a peace officer (CPL 2.10 [23]), and a peace officer "may arrest a person for . . . [a]ny offense when he has reasonable cause to believe that such person has committed such offense in his presence" (CPL 140.25 [1] [a]). Section 10.00 (1) of the Penal Law, in turn, defines an "offense" as

"conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same."

Here, Wijkowski testified that he arrested defendant for not following his order to submit to a urine test, which is not an offense within the meaning of section 10.00 (1) of the Penal Law. He never claimed to have arrested defendant for a parole violation—such as, for example, harassment, an offense within the meaning of Penal Law § 10.00—that would independently justify a peace officer in making a warrantless arrest if committed in his presence.

---

2. The Bill Jacket for chapter 904 does not disclose why the Legislature took this power away from parole officers.

Accordingly, the order of County Court should be reversed, and the accusatory instrument dismissed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order reversed, etc.